IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-01768-CNS-MDB

REBECCA VARNEY,

      Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO,
COLORADO SPRINGS POLICE CHIEF ADRIAN VASQUEZ, in his official capacity,
OFFICER DAVID KESTER, in his individual capacity, and
OFFICER CARLOTTA RIVERA, in her individual capacity,

      Defendants.

---

## ORDER

---

Defendants move to dismiss Plaintiff Rebecca Varney's complaint under Federal Rules of Civil Procedure 8 and 12(b)(6). ECF Nos. 70, 71. For the reasons below, the Court dismisses Ms. Varney's federal claims against Defendants and declines to exercise jurisdiction over her remaining state law claims.

### I.     FACTUAL BACKGROUND[1]

This case arises out of an investigation by Officers David Kester and Carlotta Rivera, both Colorado Springs police officers. ECF No. 62 (first amended complaint), ¶¶

---

[1] The background facts are taken from the well-pleaded allegations in Ms. Varney's first amended complaint, ECF No. 62. For purposes of these motions, the Court accepts as true, and views in the light most favorable to Ms. Varney, all factual allegations contained in her complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Additionally, as explained in below in Section IV, A, the Court considers Defendants' exhibits—including the relevant body-worn camera and search warrant material—in

47–52. On Sunday, July 18, 2021, Ms. Varney called the police to report that David Wainright, her husband at the time, had entered their home the day before (on July 17) and taken her property while she was at Evans Army Community Hospital[2] being treated for an injured wrist caused by Mr. Wainwright two nights before (on July 16). *Id.*, ¶¶ 48–49.[3]

When Officers Kester and Rivera arrived at the house on July 18, Ms. Varney told them that Mr. Wainwright had assaulted her two nights prior. *Id.*, ¶ 55. During the visit, Ms. Varney showed the officers a home video of the alleged assault on her phone. *Id.*, ¶¶ 122–23, 126, 128, 141–42. Both officers recorded the entire interaction on their respective body-worn cameras. *Id.*, ¶ 52.

The home video Ms. Varney played for the officers during the visit shows Ms. Varney attempting to force her way into a room, and Mr. Wainwright attempting to prevent her from entering the room. ECF No. 70-3 ("Video of July 16 Incident" or "home video"). During the altercation, Mr. Wainwright shouts—at least three times in the 20-second home video—to "leave me alone," as he attempted to shut the door to the room he was in. *Id.* Ms. Varney injured her wrist when she used her arm to prevent the door from shutting by placing it between the door and the doorjamb while Mr. Wainwright attempted to slam the door shut. *Id.*, ECF No. 62, ¶ 30.

---

its consideration of Defendants' motions to dismiss. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[2] Because Mr. Wainwright was in the military at the time of the incident, Ms. Varney went to the military hospital on Fort Carson, Colorado. ECF No. 62, ¶ 36.

[3] Ms. Varney explains in her first amended complaint that she and Mr. Wainright were married at the time of these events but states that they are now divorced. ECF No. 62 at 1 n.1. She also refers to the home as their "communal home." *Id.* at 2.

At the time of the July 16 incident, Ms. Varney was subject to a mandatory protection order that ordered her to not "harass, molest, [or] intimidate" Mr. Wainwright. ECF No. 62, ¶ 105; ECF No. 71-3 (Mandatory Protection Order Pursuant to Colo. Rev. Stat. § 18-1-1001). After watching the home video on Ms. Varney's phone, Officers Kester and Rivera left Ms. Varney's home to have a private conversation. *Id.*, ¶ 144. After 20 minutes, they tried to speak with Ms. Varney again. *Id.*, ¶ 147. The officers knocked on the door (and purportedly attempted to call Ms. Varney's phone), but Ms. Varney did not answer because she was in the shower. *Id.*, ¶¶ 148–50.

Later in the afternoon of July 18, 2021, Officer Rivera and Mr. Wainwright discussed the July 16 incident over the phone. *Id.*, ¶¶ 160–61. Officer Rivera captured this 40-minute call on her body-worn camera. *Id.*, ¶ 161; ECF No. 70-4 (Officer Rivera's body-worn camera recording of her call with Mr. Wainwright). Mr. Wainwright stated that on July 16, 2021, he and Ms. Varney were arguing, and after the argument escalated, he attempted to retreat to another room. *Id.* at 2:00. According to Mr. Wainwright, Ms. Varney followed him to the room and wanted to continue the argument. *Id.* After telling Ms. Varney to leave him alone "like 25 times," Mr. Wainwright tried to shut the door. *Id.* at 4:40. However, Ms. Varney began forcing her way into the room. *Id.* During the call, Mr. Wainwright stated that he felt harassed by Ms. Varney. *Id.* at 7:47; 34:20.

Ms. Varney alleges that Officer Rivera coerced and manipulated Mr. Wainwright to state that Ms. Varney harassed him. ECF No. 62, ¶¶ 162–71. For example, Officer Rivera asked, "Do you find [Ms. Varney's behavior] to be a violation of your restraining order at all?" *Id.*, ¶ 165. And when he did not answer immediately, she asked, "Do you

feel harassed, annoyed, alarmed, concerned for your safety, irritated by her behavior?" *Id.*, ¶ 166. Mr. Wainright struggled with a response, explaining that it was a "really hard" and "heavy" question. *Id.*, ¶ 167. Officer Rivera then explained that his answer determined whether this matter was criminal. *Id.*, ¶ 168. Ms. Varney alleges that, "[c]ontrary to Ms. Varney's explicit statement that she was not looking to press charges," Officer Rivera told Mr. Wainwright that Ms. Varney was "calling in today to try to get [Mr. Wainwright] arrested for breaking her arm during that incident." *Id.*, ¶ 169. Mr. Wainwright immediately responded, "Yeah, it definitely was harassment." *Id.*, ¶ 170. According to Ms. Varney, Mr. Wainwright later recanted these statements and described that he had felt "very pressured into cooperating with the police." *Id.*, ¶ 171.

Officer Kester applied for an arrest warrant for Ms. Varney. In the arrest warrant affidavit, Officer Kester stated that he was dispatched to investigate a "possible assault" that occurred two nights prior, and that "Ms. Varney . . . informed me of an altercation where she was trying to get into the room where the dogs are kept because she was in fear David [Wainwright] would beat the dogs based on his past history of abuse to the dogs." ECF No. 71-4 at 4. Officer Kester further declared that Ms. Varney told him that, while attempting to enter the room, Mr. Wainwright "tried to shut the door and during this altercation, her arm got stuck in the door as he was closing it," resulting in her arm being "fractured." *Id.* According to Ms. Varney, Officer Kester omitted essential facts and contained selective evidence in the application. ECF No. 62, ¶¶ 183–95. Specifically, she alleged that Officer Kester omitted the following facts: allegations of the assault against Ms. Varney; that Ms. Varney was attempting to force her way into the room occupied by

Mr. Wainwright not to harass him but to protect her dogs[4]; that Ms. Varney was appointed a domestic violence advocate[5]; that the military served Mr. Wainwright with a military protective order following the incident on July 16; and that there were un-interviewed witnesses. *Id.*, ¶¶ 183–99. Eventually a judge issued an arrest warrant for Ms. Varney for violations of the protection order and harassment. *Id.*, ¶ 195.

Following her interview with Mr. Wainwright, Officer Rivera texted Ms. Varney that the Colorado Springs Police Department was "putting in a warrant for [her] arrest." *Id.*, ¶ 182. She explained that it "took some time to get a hold of [Mr. Wainwright] to verify whether or not he was harassed by [her] actions," and explained that Mr. Wainwright confirmed that he did feel harassed. *Id.*, ¶ 183. Officer Rivera added, "[a]t this time there are charges of harassment and restraining order violation against you." *Id.*

The next day, Ms. Varney filed a complaint with the Colorado Springs Police Department regarding the conduct of Officers Kester and Rivera. *Id.*, ¶ 200. The Colorado Springs Police Department Internal Affairs (IA) investigation concluded that both officers' conduct had violated department policy by failing to investigate Ms. Varney's report of domestic violence and by failing to make an accurate report of sexual assault. *Id.*, ¶ 201. The IA report made several findings, including that Officers Kester and Rivera failed to interview non-party witnesses to the domestic violence incident. *Id.*, ¶ 203. The report,

---

[4] These first two facts, as noted, were included in the warrant application. ECF No. 71-4 at 4.
[5] The Army hospital provided Ms. Varney both a domestic violence advocate as well as a Sexual Assault Response Coordinator through the Sexual Harassment/Assault Response Program. ECF No. 62, ¶ 45. Ms. Varney does not state the role of the advocate or how or why she was assigned the advocate—only that the hospital provided her with one.

however, made "no findings regarding Defendants Kester's and Rivera's exclusion of pertinent evidence from the probable cause affidavit." *Id.*, ¶ 209.

Ms. Varney was charged with violation of probation and harassment. *Id.*, ¶ 285. She turned herself in on October 20, 2021, and spent 36 hours in jail.[6] *Id.*, ¶ 284. She was released on bail on October 21, 2021, and eight days later, the El Paso District Attorney's office voluntarily dismissed the charges against Ms. Varney. *Id.*, ¶ 287.

## II.     PROCEDURAL BACKGROUND

On July 12, 2023, Ms. Varney filed a 69-page, 436-paragraph initial complaint. ECF No. 1. She brought seven claims for relief, including malicious prosecution, violations of the Equal Protection Clause, and substantive due process violations—all three under both the United States and Colorado Constitutions—and a Fourth Amendment municipal liability claim. Defendants moved to dismiss all claims. ECF Nos. 20, 29. Rather than responding, Ms. Varney filed a 92-page, 554-paragrah amended complaint. ECF No. 41. On November 17, 2023, Magistrate Judge Dominguez Braswell issued an order striking the amended complaint for failure to comply with Federal Rule of Civil Procedure 8. ECF No. 58. Ms. Varney then filed her operative first amended complaint. ECF No. 62.[7] This third complaint, like the first, is 69 pages long. *Id.* Defendants City of Colorado Springs and Police Chief Adrian Vasquez (the City Defendants) move to dismiss the first amended complaint on Federal Rules of Civil Procedure 12(b)(6) and 8 grounds. ECF No. 70.

---

[6] The judge signed the arrest warrant on July 18, 2021. ECF No. 71-4. Ms. Varney states that she repeatedly attempted to quash the warrant and get the case against her dismissed but was unsuccessful. ECF No. 62, ¶ 283. The Court thus assumes that her attempted motions to quash explain the delay between July 18 and October 20.

[7] Despite being the second amended complaint, Ms. Varney titles her third iteration as the "first amended complaint." ECF No. 62. The Court will do the same to avoid any confusion.

Similarly, Defendants Officers Kester and Rivera (the Officer Defendants) move to dismiss on the same grounds. ECF No. 71. The Court addresses each in turn.[8]

## III.   LEGAL STANDARDS

### A.   Rule 8

Federal Rule of Civil Procedure 8 provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." *Id*. at (d)(1).

### B.   Rule 12(b)(6)

"To survive a [Federal Rule of Civil Procedure 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). But "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656

---

[8] Magistrate Judge Dominguez Braswell stayed discovery pending resolution of Defendants' motions. ECF No. 67.

7

F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## IV.    ANALYSIS

### A.    Documents Referenced in Ms. Varney's First Amended Complaint

To start, the parties argue extensively over whether the Court should consider documents referenced throughout Ms. Varney's complaint. The City Defendants attach four exhibits to their motion to dismiss: (1) Officer Kester's body-worn camera recording from the July 18, 2021 interaction with Ms. Varney in her home; (2) Officer Rivera's body-worn camera recording of the same interaction; (3) Ms. Varney's video of the July 16, 2021 incident involving her and Mr. Wainwright (the home video); and (4) Officer Rivera's body-worn camera recording of her phone call with Mr. Wainwright. ECF Nos. 70-1–70–4. Similarly, the Officer Defendants attach five exhibits to their motion to dismiss: (1) the July 16, 2021 home video; (2) the transcript of Officer Rivera's July 18, 2021 telephone interview of Wainwright; (3) the mandatory protective order; (4) the affidavit in support of Ms. Varney's arrest warrant; and (5) Officer Rivera's affidavit attesting to the accuracy of the interview transcript. ECF Nos. 71-1–71-5.

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim

and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Defendants argue that each exhibit is referenced in Mr. Varney's complaint and central to her claims, and the exhibits' authenticity cannot be questioned. ECF No. 70 at 4–5; ECF No. 71 at 3–4. Ms. Varney argues that the Court should decline to exercise its discretion to consider these materials because they only represent a "select universe of documents" referenced in her complaint. ECF No. 80 at 5. Critically, Ms. Varney does not dispute that the documents are referenced and quoted extensively throughout her complaint.[9] And except for one exhibit,[10] she does not challenge the authenticity of the exhibits. Thus, upon reviewing the complaint and the parties' positions, the Court finds that considering these exhibits is proper without converting Defendants' motions to dismiss to summary judgment motions. It will, however, view the evidence in light most favorable to Ms. Varney, including any video footage, "except where the video 'blatantly contradicts' Plaintiff's version of the events." *Est. of Ronquillo by & through Est. of*

---

[9] Ms. Varney references the body-worn camera recordings—or quotes the recordings—in over 40 separate paragraphs. *See* ECF No. 62, ¶¶ 52, 55, 58–59, 70, 73, 74, 78–79, 86–88, 91, 93-97, 106–10, 113, 116, 118–20, 126, 129, 131–32, 136–39, 141, 143–44, 154, 308, 324. Similarly, in her complaint, Ms. Varney notes that Officer Rivera recorded her conversation with Mr. Wainwright and then repeatedly quotes it. *Id.*, ¶¶ 161–63, 165–67, 169, 170, 174–77. Finally, Ms. Varney's complaint references the home video of the incident between her and Mr. Wainwright multiple times in her complaint. *Id.*, ¶¶ 111, 113, 122–23, 126, 128–29, 135, 141–42, 153, 185–87, 190–91, 194, 197–98, 232, 241, 307, 397.

[10] As noted above, City Defendants attached Officer Rivera's body-worn camera recording of her phone call with Mr. Wainwright. ECF No. 70-4. However, the Officer Defendants opted to transcribe that call by a certified reporter instead of attaching the recording. ECF No. 71-2. Ms. Varney notes that this transcript was "never referenced in – let alone central to – Plaintiff's FAC," and she disputes the authenticity of the transcript, arguing that the "bare reproduction of the words spoken during the interview does not reflect the coercive nature of the call." ECF No. 80 at 5 n.2. That objection is questionable, but because Ms. Varney challenges the authenticity of the transcript, and because the City Defendants attached the body-worn camera recording of the phone call, the Court will not consider the transcript in resolving Defendants' motions. *See Jacobsen*, 287 F.3d at 941.

*Sanchez v. City & Cnty. of Denver*, No. 16-CV-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016) (citations omitted), *aff'd*, 720 F. App'x 434 (10th Cir. 2017).

**B.     Fourth Amendment Malicious Prosecution (Claim 1)**

Ms. Varney brings a malicious prosecution claim against the Officer Defendants under the Fourth Amendment through 42 U.S.C. § 1983. ECF No. 62, ¶¶ 298–312. The Officer Defendants contend that Ms. Varney's malicious prosecution claim should be dismissed under the doctrine of qualified immunity. ECF No. 71 at 8–17.

*1.     Qualified Immunity*

The qualified immunity doctrine shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotations omitted). "The record must clearly demonstrate the plaintiff has satisfied [her] heavy two-part burden; otherwise, the defendants are entitled to qualified

immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (citation and quotations omitted). When a plaintiff fails to satisfy either prong, the Court must grant qualified immunity. *Id.*

In its discretion, the Court may begin its analysis with either prong. *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020). Here, the Court elects to begin its analysis with the clearly established law prong.

### a.    *Clearly Established Law Prong*

Ms. Varney alleges that the Officer Defendants violated her Fourth Amendment rights by maliciously prosecuting her and thus brings a § 1983 malicious prosecution claim.[11] Specifically, Ms. Varney alleges that the Officer Defendants lacked probable cause—or even arguable probable cause—to seek an arrest warrant on July 18, 2021, because they knowingly or recklessly misrepresented and omitted critical information in the warrant (relating to the events of July 16, 2021), including reports of sexual and physical abuse, the existence of a military protective order against Mr. Wainwright, photographs of her injuries, and a description of her visibly splinted wrist. ECF No. 62, ¶¶ 303–04. Ms. Varney further alleges that, had the Officer Defendants conducted an

---

[11] A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023). The Officer Defendants challenge two of the elements, arguing that Ms. Varney failed to sufficiently plead the lack of probable cause or malice on the part of the Officer Defendants. ECF No. 71 at 11–16.

adequate investigation of the July 16, 2021 incident, arguable probable cause would not have existed to arrest her. *Id.*, ¶ 306.

In response, the Officer Defendants argue that Ms. Varney's allegations, taken together with documents referenced in and central to her claims, easily support probable cause to arrest her for violating her protective order. ECF No. 71 at 11–15; ECF No. 84 at 4–5. And in any event, Ms. Varney merely identifies high-level legal principles without identifying a single case involving similar circumstances. ECF No. 84 at 7–10. The Court agrees with the Officer Defendants on both points. It begins its analysis with their second argument.

The Court reiterates that it is Ms. Varney's "heavy" burden to identify caselaw where an officer acting under similar circumstances as the Officer Defendants was shown to violate clearly established constitutional law (i.e., where arguable probable cause did not exist to arrest an individual under similar circumstances ). *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008)). Ms. Varney points to two cases. ECF No. 80 at 18. First, she cites *Pierce v. Gilchrist* for the proposition that "[n]o one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest." 359 F.3d 1279, 1298 (10th Cir. 2004).[12] Second, Ms. Varney cites *Chavez-Torres*

---

[12] *Pierce v. Gilchrist* involved a complaint of fabrication of inculpatory evidence and the disregarding of exculpatory evidence specifically concerning forensic test results for hair and blood samples which resulted in Pierce's arrest and imprisonment for a rape he did not commit. 359 F.3d at 1281–82. The Tenth Circuit has since limited the holding of *Pierce*, stating that it "put[] the constitutionality of certain conduct beyond debate, but it is limited to its factual context. For example, under *Pierce*, an officer will lack immunity for omitting forensic hair and blood tests from an arrest warrant where those tests exculpate the subject of the

*v. City of Greeley* for the same general concept—that malicious prosecution undertaken without probable cause constitutes a constitutional violation. No. 14-CV-01187-RBJ, 2015 WL 1850648, *7 (D. Colo. Apr. 21, 2015).[13] Although true statements of law, the facts of these two cases are distinguishable from Ms. Varney's situation—perhaps the reason why Ms. Varney does not address the facts or circumstances of these cases in her brief.

The Court is therefore left with nothing more than clearly established law at a "high level of generality," which the Supreme Court has consistently warned is insufficient. *White v. Pauly*, 580 U.S. 73, 79–81 (2017) ("Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality." (citation and quotation marks omitted)). Rather, Ms. Varney was obligated to present clearly established law that is "particularized" to the facts of her case, which she

---

warrant." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 912 (10th Cir. 2020). The *Kapinski* court held that, under the facts of the *Kapinski* case, it had "little trouble concluding a reasonable officer in Detective Juarez's position would not take *Pierce* as guiding or clarifying with respect to whether to include the [allegedly exculpatory surveillance] footage in her warrant affidavit." *Id.* The same is true here: neither *Pierce* nor *Kapinski* provide fair notice to the Officer Defendants that their failure to include the purportedly exculpatory evidence (that Ms. Varney was appointed a victim's advocate, that Mr. Wainwright was issued a military protective order, that there were un-interviewed witnesses, and photographs of Ms. Varney's injuries) was unconstitutional or would vitiate probable cause.

[13] *Chavez-Torres v. City of Greeley* originated when an unknown woman presented a driver's license belonging to the plaintiff and attempted to cash a fraudulent check at a Greeley, Colorado bank. No. 14-CV-01187-RBJ, 2015 WL 1850648, at *1 (D. Colo. Apr. 21, 2015). The woman hastily left the bank after an employee began to investigate whether the check was legitimate. *Id.* The next day, a Greely police officer began investigating the alleged crime. *Id.* The officer went to the plaintiff's home and arrested her in front of her three children despite the plaintiff strongly denying that she was the person who attempted to cash the fraudulent check. *Id.* The plaintiff was charged with forgery. *Id.* At a hearing the day after her arrest, a judge found probable cause existed for the arrest. *Id.* It appears the plaintiff spent over a month in jail. *Id.* The case, however, was ultimately dismissed by the prosecution "due to [its] inability to meet its burden of proof in a criminal case since the Plaintiff had not committed a crime." *Id.* Plaintiff then brought a false arrest/false imprisonment claim under both the Fourth and Fourteenth Amendments and a malicious prosecution claim under those same amendments. *Id.* at *3. Given the factual distinctions, *Chavez-Torres*, like *Pierce*, is not "particularized to the facts of the case." *Flores v. Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024) (internal quotation marks omitted).

failed to do. *Id.*; *Flores v. Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024) ("[T]he clearly established law must be particularized to the facts of the case." (citation and quotation marks omitted)); *id.* at 1199 (reversing denial of qualified immunity for defendant officers because "[n]either the district court nor plaintiffs have identified precedent determining a Fourth Amendment violation occurred under similar circumstances").

In addition to failing to identify "particularized" clearly established law, the Officer Defendants' conclusion that probable cause existed to find that Ms. Varney violated Colo. Rev. Stat. §§ 18-6-803.5(1)(a) and 18-9-111(1)(h) was objectively reasonable.[14] *See Stonecipher*, 759 F.3d at 1141. As noted above, probable cause "is not a high bar." *Hinkle*, 962 F.3d at 1220 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014) (citations omitted)). "In the context of a qualified immunity defense on an unlawful search or arrest claim, [the Court] ascertain[s] whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher*, 759 F.3d at 1141 (internal citation and quotations omitted); *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (recognizing that the "arguable probable cause" inquiry is part of qualified immunity's second prong—whether the law was clearly established). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable

---

[14] The arrest warrant application stated that probable cause existed to believe that Ms. Varney violated Colo. Rev. Stat. § 18-6-803.5—violation of protection order—and Colo. Rev. Stat. § 18-9-111—harassment. ECF No. 71-4. As relevant here, a violation of a protection order under § 18-6-803.5(1)(a) requires that the restrained person (Ms. Varney) have actual knowledge of the contents of the order, which she does not dispute, and that she "harasses, injures, intimidates, molests, threatens" or violates any other conduct prohibited by the protection order. Harassment under § 18-9-111(1)(h) provides that "a person commits harassment if, with intent to harass, annoy, or alarm another person, he or she . . . [r]epeatedly insults, taunts, challenges . . . another [person] in a manner to likely provoke a violent or disorderly response."

cause exists." *Stonecipher*, 759 F.3d at 1141. "A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (citation and quotations omitted). The Court is particularly swayed by three facts.

First, the July 16 incident leading to Ms. Varney's arrest in this matter was preserved by body camera and audio recordings. ECF No. 62, ¶¶ 52, 161; ECF Nos. 70-1–70-4. Ms. Varney is seen on the video recordings attempting to force her way through a bedroom door occupied by Mr. Wainwright. ECF No. 70-3. Conversely, Mr. Wainwright is seen attempting to keep the bedroom door closed to prevent Ms. Varney's entry into the room. *Id.* He is also heard repeatedly asking Ms. Varney to leave him alone—pleas that were ignored. *Id.*

Second, in addition to video evidence, Ms. Varney admitted that she attempted to force her way into the bedroom against Mr. Wainwright's will. ECF No. 62, ¶ 30 ("Ms. Varney attempted to protect her dogs by *pushing her way into the room* where they were being held by her ex-husband." (emphasis added)); ECF No. 70-1 at 11:15 (same). She also admits that she was subject to a mandatory protection order at the time of the incident which required her to not harass Mr. Wainwright. ECF No. 62, ¶ 105; ECF No. 71-3.

Third, Mr. Wainwright, in a pre-arrest interview recorded by Officer Rivera's body-worn camera, described Ms. Varney's forceful attempt to physically push her way into the

bedroom against his will despite his pleas to be left alone, explaining that he felt harassed. ECF No. 62, ¶¶ 160–70 ("Yeah, it definitely was harassment."); ECF No. 70-4.

Even viewing the facts alleged in light most favorable to Ms. Varney, the Court concludes that Ms. Varney has not demonstrated that, under clearly established law, reasonable officers in the Officer Defendants' position would have had fair warning that they lacked probable cause to arrest Ms. Varney for violating of Colo. Rev. Stat. §§ 18-6-803.5(1)(a) and 18-9-111(1)(h).[15] *A.M. v. Holmes*, 830 F.3d 1123, 1139–40 (10th Cir. 2016). Stated another way, similarly situated officers could have reasonably believed—even if mistakenly—that they possessed probable cause under §§ 18-6-803.5(1)(a) and 18-9-111(1)(h) to arrest Ms. Varney.[16] *Id.*

\* \* \*

---

[15] Because the Court determines that arguable probable cause supported the arrest for violations of the protection order and harassment, the Court need not analyze whether the Officer Defendants acted with malice. *See Wilkins*, 528 F.3d at 799.

[16] The Court pauses to address the CSPD IA investigation mentioned in Ms. Varney's complaint. ECF No. 62, ¶¶ 200–21. As noted in the background, Ms. Varney filed a complaint against the Officer Defendants following the incident, and the IA investigation concluded that the Officer Defendants' conduct violated CSPD policy by failing to investigate Ms. Varney's report of domestic violence and by failing to make an accurate report of sexual assault. *Id.*, ¶ 201. The City Defendants acknowledge as much in their response. ECF No. 70 at 11 n.6. However, the City Defendants correctly point out that the IA report does not indicate a constitutional violation, *id.*, as there is "no constitutional right to have law enforcement investigate complaints against other parties." *Butler v. Atchison Police Dep't*, No. 19-3167-SAC, 2019 WL 4640582, at *2 (D. Kan. Sept. 24, 2019) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) for the proposition that there is no due process right to have someone else arrested for a crime, *Webb v. Caldwell*, 664 F. App'x 695, 696 (10th Cir. 2016) for the proposition that there is no constitutional right to have action taken against a person who threatened plaintiff, and collecting other cases for the same). Ms. Varney barely addresses the IA report in her response to Defendants' motions. She does confirm, however, that she is not claiming "that the Officer Defendants' failure to arrest her ex-husband constitutes a constitutional violation. Rather, she alleges that their decision to arrest her and *not* him as well, despite having at least as much evidence that he committed a crime, illustrates their discriminatory motive." ECF No. 80 at 28 n.14. Thus, although the Court does not condone the conduct that violated CSPD policy, the Court finds that it does not invalidate the arguable probable cause in this case.

16

Because Ms. Varney has not identified precedent determining a Fourth Amendment malicious prosecution violation occurred under similar circumstances encountered by the Officer Defendants, and because the Court finds that arguable probable cause existed under existing precedent, Ms. Varney has failed to satisfy her burden with respect to the clearly established law prong. The Court need not address the first prong and therefore dismisses her first claim with prejudice. *Felders*, 755 F.3d at 877–78 (10th Cir. 2014) (failure to satisfy either prong requires dismissal on qualified immunity grounds); *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010 (dismissal based on qualified immunity should be with prejudice); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000) (same).

### C.     Fourteenth Amendment Municipal Policy Claim (Claim 5)[17]

Ms. Varney alleges that Defendants Colorado Springs and Police Chief Vasquez failed to properly train, supervise, and discipline the Officer Defendants leading up to and following the incident, and such failure, according to Ms. Varney, constitutes an unconstitutional policy, procedure, custom, and practice that was a moving force behind the Officer Defendants' malicious prosecution of Ms. Varney. ECF No. 62, ¶¶ 369–82. City Defendants argue that they should be dismissed from this case because the Officer Defendants had probable cause to believe that Ms. Varney violated her restraining order on July 16, 2021. ECF No. 70 at 3. Thus, they did not violate her constitutional rights by seeking a warrant for her arrest, and as such, Ms. Varney's municipal liability claims

---

[17] It is unclear to the Court whether Ms. Varney's *Monell* claim relates to her equal protection and substantive due process claims as well, but as explained below, the Court also dismisses those claims.

against the City Defendants must fail. *Id.* at 3, 5–7. The Court agrees with the City Defendants.

The Court has already determined that the Officer Defendants had arguable probable cause to seek an arrest warrant against Ms. Varney, and thus, they are entitled to qualified immunity on that claim. Plaintiff therefore cannot show a violation of her Fourth Amendment rights. "[A]bsent a constitutional violation by the individual police officers whose conduct directly caused [Ms. Varney's] injuries, there can be no municipal liability imposed on the City of [Colorado Springs] on account of its policies, customs, and/or supervision with regard to the individual defendants." *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1156 (10th Cir. 2001).[18]

Accordingly, Plaintiff's fifth claim for relief is dismissed without prejudice.

---

[18] For this same reason, the Court also dismisses the *Monell* claim against Chief Vasquez, who is sued in his official capacity, for the same reasons as the City. The Court further notes that, in some narrow circumstances, "municipal liability under *Monell* may exist without individual liability." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033–34 (10th Cir. 2020) (citing *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985)). This general principle appears limited to situations involving multiple employees where the combined action or inaction of multiple actors causes a constitutional violation, but no individual actor rises to that level. *See id.* ("[W]e concluded in *Garcia* that even though 'acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights.'" (quoting *Garcia*, 768 F.2d at 310)); *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("The general rule in *Trigalet* is that there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable. In most cases, this makes the question of whether a municipality is liable dependent on whether a specific municipal officer violated an individual's constitutional rights. But *Garcia* remains as a limited exception where the alleged violation occurred as a result of multiple officials' actions or inactions."). Although not specifically limited to claims of inadequate medical care, the overwhelming majority of cases relying on this holding involve such claims. S*ee, e.g.*, *Beseau v. Cooper*, No. 18-CV-01670-PAB-KMT, 2021 WL 1192899, at *1 (D. Colo. Mar. 30, 2021); *Bowlds v. Turn Key Health*, No. CIV-19-726-SLP, 2021 WL 354109, at *3 (W.D. Okla. Feb. 2, 2021); *Woodson v. Armor Corr. Health Servs., Inc.*, No. 20-CV-00186-RM-KMT, 2021 WL 1300596, at *11 (D. Colo. Feb. 8, 2021), *report and recommendation adopted*, No. 20-CV-00186-RM-KMT, 2021 WL 1050009 (D. Colo. Mar. 19, 2021); *DeVargas v. Bd. of Cnty. Comm'rs for Santa Fe Cnty.*, No. CIV 21-0271 RB/SCY, 2021 WL

### D.      Fourteenth Amendment Equal Protection Claim (Claim 3)

Ms. Varney alleges in her third claim that Officer Rivera "treated Ms. Varney differently compared to her ex-husband, who was similarly situated to her in that both faced domestic violence allegations arising from the same set of facts." ECF No. 80 at 28; ECF No. 62, ¶¶ 329–53.[19] Officer Rivera argues that Ms. Varney has not met her burden of pleading that gender was a motivating factor in her arrest because she only cited one purported occasion in which Officer Rivera had a similar complaint made against her prior to Ms. Varney's arrest. ECF No. 71 at 18–19.

"Although there is no general constitutional right to police protection," police officers "may not discriminate in providing such protection." *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988). "To assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011) (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998)). Additionally,

---

4864478, at *1 (D.N.M. Oct. 19, 2021). Under the facts of this case, the Court finds that *Quintana* does not apply.

[19] Ms. Varney clarified her Equal Protection claim in her response as follows: "Contrary to the Officer Defendants' suggestion that Plaintiff believes she was 'entitled to the arrest of Wainwright,' ECF No. 71 at 3, Plaintiff does not claim that the Officer Defendants' failure to arrest her ex-husband constitutes a constitutional violation. Rather, she alleges that their decision to arrest her and *not* him as well, despite having at least as much evidence that he committed a crime, illustrates their discriminatory motive." ECF No. 80 at 28 n.14. The Court acknowledges that Ms. Varney provides extensive allegations with respect to one other case where Officer Rivera purportedly arrested a woman (identified as the Complainant in Ms. Varney's complaint) who was a victim of domestic violence by her ex-boyfriend instead of the ex-boyfriend. ECF No. 62, ¶¶ 242–60. In the event Ms. Varney is attempting to bring an Equal Protection claim that is broader than just the situation between her and Mr. Wainwright, the Court would still find that Ms. Varney is not similarly situated as the Complainant largely for the same reason that it finds that Ms. Varney and Mr. Wainwright are not similarly situated—namely that she does not allege that the Complainant's ex-boyfriend (unlike Mr. Wainwright here) was protected from harassment by a court-ordered mandatory protection order.

a "plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Watson*, 857 F.2d at 694. Claims of gender discrimination are subject to intermediate scrutiny, *Brown*, 662 F.3d at 1172, under which a plaintiff must plead sufficient facts to show that the alleged unconstitutional conduct is not "substantially related to a legitimate state interest," *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982).

The Court construes Ms. Varney's claim as a "class of one claim." "Class of one doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). The traditional principles, however, associated with equal protection class discrimination claims still apply, and Ms. Varney must show that she was "intentionally treated differently from others similarly situated." *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Ms. Varney argues that she and Mr. Wainwright were "similarly situated" in that they "both faced domestic violence allegations arising from the same set of facts." ECF No. 80 at 28. The Court is not convinced.

To be "similarly situated," the individuals must be "identical in all relevant respects or directly comparable . . . in all material respects. Although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *U.S. v. Moore*, 543 F.3d 891, 896–97 (7th Cir. 2008) (internal citations and quotation marks omitted); *see also A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1253 (D. Colo. 2011) (quoting *Moore*, 543 F.3d at 896–97). The "similarly situated"

requirement is an "exacting burden." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006) ("[C]ourts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.").

Applying this exacting burden, the Court finds that Ms. Varney failed to plausibly allege facts to allow the Court to draw the reasonable inference that Officer Rivera intentionally treated her differently from Mr. Wainwright because of her gender. It may be true that both individuals faced domestic violence allegations arising from the same set of facts. But at the time of the incident, Mr. Wainwright—not Ms. Varney—possessed a court-ordered mandatory protection order against Ms. Varney which prevented her from harassing him.[20] ECF No. 62, ¶ 105. And Ms. Varney was observed on the home video trying to enter the room where Mr. Wainwright had attempted to barricade himself—a point Ms. Varney admits. *Id.*, ¶ 30. In sum, Ms. Varney and Mr. Wainwright were not similarly situated.

Accordingly, Ms. Varney's Fourteenth Amendment Equal Protection claim is dismissed without prejudice.

### E.    Fourteenth Amendment Substantive Due Process Claim (Claim 6)

Ms. Varney brings her § 1983 Substantive Due Process claim against all Defendants. ECF No. 62, ¶¶ 383–412. She first alleges that the Officer Defendants "made

---

[20] The Court acknowledges that Mr. Wainwright was "immediately served with a Military Protective Order ("MPO")" by his superiors *after* the July 16, 2021 event that prohibited him from contacting Ms. Varney. ECF No. 62 at 2; *id.*, ¶ 37 ("The same day, July 17, 2021, Ms. Varney's ex-husband's superior officers issued an MPO forbidding him from contacting Ms. Varney."); *id.*, ¶ 178. However, Ms. Varney acknowledges that Mr. Wainwright received permission from his superiors to return to their "shared home" while Ms. Varney was "away," presumably to collect personal belongings. *Id.*, ¶ 38 ("While Ms. Varney was away from their shared home, her ex-husband obtained permission from his superior officers to return to the home.").

the deliberate decision to manipulate a judicial officer into believing that probable cause existed, thus depriving Ms. Varney of her constitutional rights, subjecting her unnecessarily to the criminal legal system, further trapping her in her abusive marriage, and preventing her from moving out of state away from her ex-husband." ECF No. 80 at 31 (citing ECF No. 62, ¶¶ 182–99, 279–95, 402–04). She goes on to allege that the "manufacturing of putative probable cause and the prosecution of women who call for help as victims of domestic violence are common and widespread practices within CSPD" and the "City Defendants took no action to prevent such constitutional deprivations through training, supervision, or discipline, instead condoning the behavior and allowing such conduct to continue unchecked." *Id.* (citing ECF No. 62, ¶¶ 222–24).

The Officer Defendants argue that in *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court foreclosed a substantive due process malicious prosecution claim where Colorado provides an adequate post-deprivation remedy. ECF No. 71 at 19–20. The City Defendants argue that Ms. Varney simply failed to allege conduct that "shocks the conscience." ECF No. 71 at 12–13. The Court agrees with Defendants on both points.

The Tenth Circuit recognizes a § 1983 claim for a violation of Fourteenth Amendment substantive due process rights only "in the narrowest of circumstances." *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (Justice Stevens, writing for a unanimous Court, explained that, "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended"). The conduct alleged "must do

more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power        [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Becker*, 494 F.3d at 922–23 (quoting *Livsey v. Salt Lake Cnty.,* 275 F.3d 952, 957–58 (10th Cir. 2001). "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie,* 438 F.3d 1036, 1040 (10th Cir. 2006) (citation and quotations omitted).

The Tenth Circuit has said that this "standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity." *Id.* at 923. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* (quoting *Albright,* 510 U.S. at 272).

Even accepting as true the allegations in Ms. Varney's complaint,[21] the conduct alleged does not meet the rigorous standards set forth above. To start, the conduct does not directly relate to marriage, family, procreation, or the right to bodily integrity. *See Albright,* 510 U.S. at 272. And although the Court does not condone Defendants' actions—if true as alleged and argued by Ms. Varney—the Court cannot conclude that the complained-of conduct was "egregious and outrageous." *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013); *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)

---

[21] Of course, conclusory allegations are not entitled to the presumption. *See, e.g.*, ECF No. 62, ¶ 387 ("Defendants Kester and Rivera both arbitrarily abused their authority or employed their authority as an instrument of oppression throughout their interactions with Ms. Varney and her ex-husband.").

("[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. The level of conduct required to satisfy this additional requirement cannot precisely be defined, but . . . [w]e do know, however, that the 'shock the conscience' standard requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking." (citation omitted))

The Court also finds that, under the facts of this case, *Albright* does, in fact, foreclose Ms. Varney's Fourteenth Amendment Substantive Due Process claim. In *Est. of Papadakos v. Norton*, the Tenth Circuit stated that, in "light of the Supreme Court's holding in *Albright* and our opinions in *Becker* and *Taylor*, we conclude that [the plaintiff] had no substantive due process right under the Fourteenth Amendment to remain free from being arrested for, or charged with, a crime based on the allegedly coerced statements of a third party." 663 F. App'x 651, 658 (10th Cir. 2016) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) for the proposition that "Fourteenth Amendment substantive due process standards ha[d] no applicability" to the plaintiff's allegation "that his wrongful arrest and seven-week detention constituted an unreasonable seizure and deprivation of his liberty, in violation of the Fourth, Fifth and

Fourteenth Amendments," and proceeding to address the plaintiff's claim solely under Fourth Amendment framework).[22]

The reason *Albright* forecloses these claims is because they generally arise in conjunction with alleged Fourth Amendment and related state law violations. For that reason, scholars have found that *Albright* "*did* eliminate all § 1983 malicious prosecution claims based on substantive due process, substantial deprivation of liberty or not, *where the state provides an adequate postdeprivation remedy*." Sheldon Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983*, § 3:68 (2023-2024 ed.) (second emphasis added); *see also Becker*, 494 F.3d at 922 (citing *Torres v. McLaughlin,* 163 F.3d 169, 173 (3d Cir. 1998) to support holding that *Albright* forecloses substantive due process analysis only if the claim "is covered by the Fourth Amendment" and *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001) for the same support, namely that "§ 1983 malicious prosecution claims may still be available pursuant to the Fourteenth Amendment's substantive due process rights" in cases that do not involve a Fourth Amendment seizure); *see also Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989) for the proposition that "§ 1983 [should] not replace state tort law").

---

[22] Ms. Varney does not appear to allege or argue that her case fits within the possible exception to the rule—"where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure." *See Becker*, 494 F.3d at 922 (quoting *Albright*, 510 U.S. at 291 (Souter, J., concurring)). As the *Papadakos* court found, that exception would not apply where the plaintiff was "arrested and charged on the same day." 663 F. App'x at 658.

Accordingly, because Ms. Varney has brought federal (under the Fourth Amendment) and state malicious prosecution claims, the Court dismisses Ms. Varney's Fourteenth Amendment § 1983 Substantive Due Process claim.

### F.    Ms. Varney's State Law Claims

Where, as here, a district court dismisses all federal claims, in its discretion, "the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added); *see also* 28 U.S.C. § 1367(c)(3). Because the Court is dismissing the federal claims, the Court declines to exercise supplemental jurisdiction of the state law claims.

Accordingly, Plaintiff's second, fourth, and seventh claims for relief are dismissed without prejudice.

### V.    CONCLUSION[23]

Consistent with the foregoing analysis, the Court dismisses Ms. Varney's federal claims and declines to exercise jurisdiction over her remaining state law claims. Thus, the City Defendants' motion to dismiss at ECF No. 70 is GRANTED, and the Officer Defendants' motion to dismiss at ECF No. 71 is GRANTED in part and DENIED in part. The Court orders the following:

(1)    Claim One is DISMISSED WITH PREJUDICE under the doctrine of qualified immunity;

(2)    Claims Three, Five, and Six are DISMISSED WITHOUT PREJUDICE for failure to state a claim;

---

[23] Because the Court concludes that dismissal of Ms. Varney's federal claims is warranted, the Court does not address whether the complaint violates Federal Rule of Civil Procedure 8(a).

(3)     Having declined to exercise supplemental jurisdiction over Plaintiff's state law claims, claims Two, Four, and Seven are DISMISSED WITHOUT PREJUDICE.

(4)     The Clerk of Court is directed to close this case.


DATED this 10th day of September 2024.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge